## Case No. 15,824.

### UNITED STATES v. MOSES.

[1 Cranch, C. C. 170.] [1]

Circuit Court, District of Columbia. June Term, 1804.

WITNESS—INCRIMINATING TESTIMONY.

A witness is not bound to answer a question. the answer to which may tend to criminate himself.

E. J. Lee, for the United States, produced Billy, a witness. The confession of Moses had been given in evidence. that he bought the goods of Billy, (the goods having been proved to have been stolen.) The question was asked of Billy, whether he sold them to Moses. Objection by Mr. Jones, that it tended to criminate the witness.

THE COURT sustained the objection.

## Case No. 15,825.

### UNITED STATES v. MOSES.

[4 Wash. C. C. 726.] [2]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1827.

COUNTERFEITING—INTENT—WITNESS—PRIVILEGED COMMUNICATIONS.

1. In a criminal prosecution, the officer who apprehended the prisoner being examined as a witness for the United States, is not bound to disclose the name of the person from whom he received the confidential information which led to the prisoner's detection.

[Cited in Re Quarles, 158 U. S. 536, 15 Sup. Ct. 961.]

[Cited in State v. Soper, 16 Me. 295; Worthington v. Scribner, 109 Mass. 491; People v. Laird, 102 Mich. 135, 60 N. W. 457.]

2. The same witness being asked, if A B had told him if he would come to a particular house, (being that where the forgery, the offence charged, was carrying on.) on a certain day, he would have the prisoner there? The court required him to answer the question.

3. In a prosecution for forging the notes of the bank of the United States, it is necessary to prove that it was committed with intent to defraud some corporation or person, and that the notes stated in the indictment and given in evidence as forged, and those alleged to be forged, are the same.

[Cited in U. S. v. Shellmire. Case No. 16,271.]

The prisoner [Reuben Moses] was tried upon five indictments, three of which were for counterfeiting the notes of the bank of the United States, of different denominations, and the other two for having in his possession bank notes of different denominations, engraved and printed after the similitude of notes issued by the said bank, with intent to use them in forging the notes of the said bank.

1 [Reported by Hon. William Cranch, Chief Judge.]

2 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

Upon the trial of these indictments, the following points of evidence were ruled by the court: That the officer who apprehended the prisoner is not bound to disclose the name of the person from whom he received the information, which led to the detection and apprehension of the prisoner. Such a disclosure can be of no importance to the defence in this case, and may be highly prejudicial to the public in the administration of justice, by deterring persons from making similar disclosures of crimes which they know to have been committed. 1 Starkie, Ev. 106; Burr's Case [Cases Nos. 14692–14694a] in the circuit court of Virginia; 2 Starkie, Ev. 400. The witness was then asked. whether Bernard Johnson, the person, in whose house the defendant was apprehended whilst sitting on a table on which the counterfeit bank notes mentioned in those indictments were lying. had told him, that if he would come to his house on a certain day, being the day on which the prisoner was apprehended, he would have the prisoner Craig there. This was objected to by the district attorney, but the objection was overruled. The evidence may be all important to the defence, by showing or laying a ground for presuming that he was innocently at the place where the officer found him. in consequence of an insidious invitation given to him by Johnson. This is a very different question from the former.

Mr. Ingersoll, U. S. Dist. Atty.

Randall & Philips, for defendant.

WASHINGTON, Circuit Justice (charging jury). The crimes charged against the prisoner in the indictments, on which the jury have to decide, are: (1) The counterfeiting of certain bank notes of various denominations, purporting to be notes of the bank of the United States. (2) Having in his possession certain blank notes, engraved and printed after the similitude of the notes issued by that corporation, with intent to use them in counterfeiting notes issued by that corporation.

That the prisoner did counterfeit the notes under the first head, with intent to defraud the bank of the United States, or some other corporation or person, and that the notes set forth in the indictment and given in evidence, and those alleged to be counterfeit, are the same; ought to be proved to the satisfaction of the jury, to warrant them in convicting the defendant. As to the identity of the notes, the evidence is as follows: The officer who found the counterfeit notes as well as the blank ones on a table at which the defendant was sitting, swears that he bundled them up in different parcels, and delivered them to the mayor; who, upon his examination, has stated that he delivered the same notes to the district attorney; who, with his assistant in drawing these indictments, retained the possession of